Thank you, Judge Ikuda. May I reserve two minutes for rebuttal, please? Okay, please watch the clock. Thank you. May it please the Court. This appeal presents two top-level issues. The first is, considering the posture of this case, whether there was any evidence that an extension of time to move out may have been necessary for Glenn Howard. The second issue is whether a landlord can ignore a request for accommodation from a disabled tenant. This is the interactive process issue. Could I interrupt you? I'm sorry to jump in, but this was a threshold question I had that wasn't answered by your briefs. So the statute says there has to be a reasonable accommodation in rules, policies, practices, or services. Can you tell me what the rule, policy, practice, or service is that you're saying that HMK did not make a reasonable accommodation in? Yes, Your Honor. So the policy is that a tenant whose term has expired generally needs to move out. In this case, the Howards requested exception to that policy. Well, it's the tenants who were offered a lease and chose not to sign a lease, and then their month-to-month tenancy expired, were asked to move out, right? So they did have the opportunity to extend the tenancy, just not on the exact terms they wanted, right? Yes, Your Honor. The landlord wished to increase the monthly rent to $6,000, and the Howards did offer that amount. I believe they wished to continue their tenancy and not move out by the July end date, Your Honor. Well, they didn't offer it. They didn't accept it when it was offered. In fact, they turned it down and said, I can't remember the exact words, but we reject your illegal terms, refused to sign the lease. Then were given the 60-day notice to quit or whatever the exact term is in California, and then they asked for an accommodation until July, and then they were given it. But they did have an opportunity to sign a lease. They just chose not to sign it. You're correct, Your Honor. The first accommodation extending from April to July, they did turn down the opportunity, but ordinarily when you do that, a tenant should move out by the end of the tenancy. But in this case, an exception was requested to that general rule on account of Glenn's disability. So if a person who didn't have a disability had ended the period of the lease and was given the opportunity to sign a new lease and rejected it and then was asked to leave, how was his ability to, his opportunity to use and enjoy the dwelling any different than your client's? Both of them would have an equal opportunity to extend the lease and stay in the apartment building. So that was the second point I didn't understand. Yes, Your Honor. Well, a non-disabled tenant would have been able to move out without the difficulties that my client experienced. But it's not moving out. It's whether it's necessary to afford such person equal opportunity to use and enjoy a dwelling. So the disabled person and the non-disabled person in the dwelling, both of whom refused to sign a lease, how is an extension necessary for the disabled person to have equal opportunity to use and enjoy the dwelling as the non-disabled person? Well, a non-disabled person can vacate the premises without the difficulties incurred by Glenn Howard. Right, but the only thing that the statute gives is use and enjoyment of the dwelling. And they both had equal opportunity to use and enjoy the dwelling so far as I can tell. The disability in this case is a little different from other disabilities, Your Honor. For example, if a disabled person's disability is they need a wheelchair and they cannot stand, an accommodation to afford them an equal opportunity to enjoy the premises would perhaps be a ramp into the house. Let me just interrupt you there. So in that case, a non-disabled person could walk up the stairs into the apartment building. A disabled person couldn't do that without a ramp. So a ramp would be necessary to give the disabled person an equal opportunity to use and enjoy the dwelling. How does that apply here, though? Well, if I'm understanding Your Honor's question, the question is how are they staying in the dwelling. No, I want to know how a non-disabled person and a disabled person do not have an equal opportunity to use and enjoy the dwelling unless the disabled person gets an extension. I don't understand that. Well, Your Honor, a non-disabled person can leave without being evicted. So being able to use and enjoy your premises means you can fulfill your tenancy without being forced out by an eviction procedure as was the case here. He did fulfill his tenancy and then refused to sign a new lease. And he could be evicted and if a non-disabled person did that, he would be in the exact same position, correct? Well, I disagree, Your Honor. A non-disabled person could leave the premises. They'd be evicted, but they could physically leave without risking stress and seizures like Glenn Howard. I'm sorry, Judge Ikuda. Go ahead, Judge Barrett. So, counsel, let me move to that point that you're making. As far as I could tell, the only evidence that you proffered District Court on summary judgment was that your client wanted to move to Florida. He didn't want to move to Florida until January. He wanted an extension to accommodate his desire not to have to move to Florida until January. But there was no evidence of any kind that he couldn't move across the street or across the town or even to San Francisco. But his doctor said he couldn't undertake a long trip. So how is the fact that he wanted to stay for six more months so he could move to Florida, how did the landlord, even assuming the landlord knew that, which I don't know is in the record, how does that show that he was denied an equal opportunity to use and enjoy a dwelling because he could have moved across the street. He just didn't want to. He just only wanted to have to move once because he wanted to end up in Florida, not L.A. Well, Your Honor, there's a couple of issues there. The first one is whether the evidence supported the conclusion that he only wanted to stay there to move to Florida. I think that's incorrect, Your Honor. You've got the doctor's letter saying he has an unresolved medical condition, that he needs to stay in the premises. I thought it said he couldn't take a long trip, and in fact in the depositions that's what the doctor said. Well, it's undisputed that the letters do say he's on a long trip, but two things can be true at once. One is he's disabled, he has night seizures. He may need to stay in the house, and that's the standard here, Your Honor. It may be necessary. Point me to one place in the record where it says it may be necessary for him to stay in the house, either through a deposition testimony of a physician or a note by a physician. I'm looking at the VA doctor's handwritten letter. I'm looking at what the affidavit is from Dr. Murty, and I don't see anything like that there. I see that the July 6, 2017 letter addressed Mr. Howard's inability to embark on a long trip or engage in long travel. The words of my letter should be given their plain meaning. Record page 95, Judge Bennett. Dr. Murty said, quote, the family needs to stay until January 22, 2018. That is the other letter, Your Honor. It doesn't quite say that. It says the family needs to stay until January 22, 2018, comma, when Mr. Howard is appropriately stabilized for long travel. The letter doesn't say anything about needs to stay there because he can't move somewhere else. It just says that if he's going for long travel, then he's not ready for long travel until January, and there was no evidence at all that I could tell that tied January to having to stay in this residence as opposed to January so he wouldn't have to move before he went to Florida. Well, Your Honor, January is when the doctors thought they could stabilize him. His normal medical treatment failed, and Dr. Murty believed he could have stabilized him by January and so requested the accommodation until then. Well, I guess I read the letters differently than you do, Cal. And, Judge Bennett, I appreciate that the letters may be ambiguous, but if that's the case, the tie goes to the Howards. The procedural posture of this case is summary judgment. And ambiguity in doctors' letters makes it a fact question. The necessity, whether an accommodation may be necessary, is a question of fact. And the error that the district court made here was… I'm sorry. But didn't the doctor say that plain meaning is what I say, which is it's an accommodation for a lengthy trip or a long trip? It wasn't an accommodation for anything more than that. And so I suppose if you could say there's no place anywhere nearby that he could stay or short of a long trip, that might be another thing. But that's not in the record. So what we have in the record is the doctor essentially saying the accommodation I'd like is that he not go on a long trip, be required to move until January. That's consistent here. It's not ambiguous in any way. Judge Woodlock, respectfully, proving that alternatives are unavailable is not what's required for a plaintiff to prove what may be necessary. The Disney case, Baumann v. Disney, this case is right on point with this proposition. In Baumann, it was undisputed that the plaintiff could have used a wheelchair in Disneyland. She was, in fact, precluded from arguing otherwise. And Judge Kaczynski held in that case that even though she could have used a wheelchair, there were these other alternatives available. That's not the right question. The question is whether a segue would have helped alleviate the plaintiff's burden. And in that case, the plaintiff had difficulty rising from a seated position. And so a segue would have helped alleviate. In this case. But counsel, in this case, I'm reading Dr. Park's deposition. So I wrote this letter that we still needed more time in effect to control his seizures before he could make a cross-country visit. And I just don't see anything ambiguous about that medical testimony. It doesn't suggest to me what you're saying. It suggests to me that I didn't want him going to Florida until January. Your Honor, even apart from Dr. Park's letter, you still have Dr. Murthy's letter, Christine Howard's deposition testimony, Gail's letters. There's a bunch of evidence from which a reasonable juror could conclude, you know, you've got these letters. The letters could have been. Excuse me. Assuming that we read the medical testimony as merely going to whether he could go on a long trip, what would you rely on as your best evidence to create a genuine issue material fact that he could not leave the apartment, even to go across the street? Christine Howard's deposition testimony, Your Honor. She testified it would impose extreme stress on her father to move out. Okay. I see my stress. Is that the best? Extreme stress. I believe the doctor's letters are the best. I see. My time is up, Your Honor. Yes, you may. We'll hear from the other side. Good afternoon, Your Honors. May it please the court. My name is Andrew Shadoff. I represent the Diapolis HMK Holdings LLC in Hovick M. Killowian. Your Honors, I think the court has hit the nail on the head in a few ways already today. The first is there's not a rule, policy, practice, or service that is at issue here. The issue was the termination of a tenancy as a matter of law. That's not a rule, policy, practice, or service that's protected by the Fair Housing Act. And I think that was recognized by the district court in the Storr v. Marrick case that we cited in our brief, S-T-O-R-R. As the court noted, the Howards had the opportunity to see. Counsel, in order to rule in your favor, we don't have to reach the question of even if the lease issues had been exactly the same, the medical evidence was that the person could not leave the house to another residence at all. We don't have to deal with that hypothetical because those aren't the facts here, right? Correct, Your Honor. As the court has pointed out earlier today, there's absolutely no evidence in the record that Mr. Howard, at the end of the tenancy, after it should be noted my client gave them an extra couple months to get things in order, could not move from the house to any other residential situation in the local area. Judge Bennett, you've noted correctly what the doctor's letters and their testimony say is that he was not yet medically stable enough to move across the country all the way to Florida, which is obviously a very different thing. Counsel pointed out, in addition to the doctor's letters, which I think is clear, do not support any triable issue of fact here, Gail Howard's letter from March 17th, 2017, and Christine Howard's deposition testimony about stress, I think it's quite clear that neither of those pieces of evidence create any triable issue of fact. Gail Howard's letter stated only that she thought it was possible for Glenn to move in July 2017. As a result of that letter, which is in the record at ER 89, HMK, the landlord, granted the extension to July 2017 for the Howard's tenancy. But at the time that Gail Howard wrote that letter, the Howards already had rejected the proposed lease. They called it illegal and invalid, to use Gail Howard's words, and they had already decided to move to Florida. And that's very clear from, among other places, the Howard's counsel at the summary judgment hearing in referring to the rejection of the lease. And Gail Howard's letter in March stated, and I quote, so they had already said no to the lease and were planning to leave. But that's when the problems with medication started arising. So they could they have to get him stable before they could. And so that's why they asked for the first the reasonable accommodation to July. So that's obviously referring to Gail Howard's March letter, which requested that first reasonable accommodation. And then a panel's counsel agreed with the district judge that the stabilization she was talking to referred to going on a long trip to Florida, which is consistent, as the courts noted, with the two doctors letters that the stability issue related to a cross-country trip. So the only reasonable inference from Gail Howard's letter is that Glenn Howard was not yet prepared to move all the way to Florida. And that's why they needed to stay from April, which is the existing tenancy date to July. As for Christine Howard's deposition testimony, the district court properly struck that testimony based on our evidentiary objection that it lacks foundation. There's no evidence creating a foundation for Christine Howard to offer the sort of medical opinion that Glenn Howard would suffer stress, extreme stress or or any other result from moving from the house to a different house. In addition, you're right. Well, first of all, the district court's ruling was correct. It was not an abuse of discretion, which is the standard there. So it should be upheld and aware of that. The appellants have now been arguing throughout their briefs that Christine Howard was one of Glenn Howard's caretakers. Respectfully, there's no evidence at all in the record that Christine Howard was a caretaker for Glenn. That theory originated from an argument that the Howard's counsel made on summary judgment at the hearing. And that, in fact, is the only citation in the appellant's brief to that argument is to the hearing transcript itself. But the counsel at the hearing did not cite any piece of admissible evidence suggesting that Christine Howard was a caretaker. So for that reason as well, she had zero foundation to opine on stress to Glenn Howard for moving. And independently of that as a third reason, there's no foundation for that statement. Christine Howard has zero experience in moving Mr. Howard from one house to another with this condition he had that developed in 2016 of nocturnal seizures. And we know that because the complaint admits at paragraph 13 that when the Howard's collectively moved into this house in 2012, Mr. Howard's condition was stable and the nocturnal seizures didn't develop until late 2016. That's confirmed by Gail Howard's declaration that ER 69 at paragraph six. So what that means is that Christine Howard, by these admissions, has no experience at all moving Glenn Howard from one house to another. So there's no foundation for her to say that moving from the subject house across the street or to any other residential situation in Los Angeles would have been stressful for Glenn. So for all those reasons, the court, as the district court correctly did, should disregard that testimony. And so those two things in the doctor's letters are the only items that the appellants point to with respect to creating a triable issue of fact. And I think it's very clear there is no tribal issue of fact based on any of that supposed evidence. And as a result, I don't think the court even needs to get into the interactive process issue because now we have the failure to make out one of the key elements in the. Although counsel, I believe your colleague is arguing in the briefs that even if there is no need to make ultimately an accommodation, there is a standalone cause of action for failure to engage in the interactive process, which can lead to liability irrespective of a violation of the statute. So I think that is the argument they're making understood, Your Honor. But my point is, I don't think the court needs to reach it because the lack of causation knocks out the entire claim. I understand counsel's argument. I think he is. He is wrong. There's no language in the statute. The Fair Housing Act requiring an interactive process. There's nothing in the implementing regulations contrary to what's in effect under the ADA Title one requiring an interactive process. There's no definitive statements from even the Department of Housing and Urban Development requiring an interactive process. At most, there's that joint statement that cited, but it says only, quote, that it would be helpful to enter into an interactive process. And my understanding is that even under even under the ADA, there's some question in at least some jurisdictions about whether there's any standalone violation. If if there's no failure to accommodate, I think that's correct, Your Honor. And this court does not really even need to get into the ADA because I think the Fair Housing Act is clear. And even under the ADA, there's only an interactive process under Title one. And this court's already found in the Tauscher case, TAUSCHER, that that interactive process requirement under Title one of the ADA doesn't even extend to Title three of the ADA, which deals with public accommodation. So it's even more removed to try to apply it to the Fair Housing Act. In addition, there are no circuit court decisions creating an independent cause of action for failure to enter into the interactive process under the Fair Housing Act. The appellants cite a couple cases. They simply do not hold that. The Australis case from the First Circuit analyzed the interactive process issue as part of the fourth element of the Fair Housing Act claim, which is whether the party refused to make the request that accommodation did not hold or suggest that there's a standalone cause of action. The Jankowski case from the Seventh Circuit said only if a landlord is skeptical of a tenant's alleged disability or the landlord's ability to provide an accommodation, it should open a dialogue. But that does not suggest that there's a standalone cause of action divorced from the actual elements of a Fair Housing Act claim. And there's a unpublished Ninth Circuit opinion, the Johns case, which was an employment case under the Rehabilitation Act that involved the obligation of employers to engage in an interactive process. And the employment context simply does not apply here for all the reasons this court enumerated in SNAP. It's separate from housing. There are separate regulations implementing the employment interactive process under the ADA that don't exist here. And in fact, the district court cases that address the interactive process as part of an FHA claim analyze it typically as part of that fourth element, including the Book case, the Rodriguez case, the Elliott case as cited in the briefs, or as part of the first element, the landlord's knowledge of the disability, which the Smith v. Powdrow case, I think from the Central District of California, that's how it analyzed interactive process. But there's no cases suggesting there's a standalone cause of action other than the Montano case from the Central District, which as our district court explained, that conclusion is not supported by the cases it cites. And I think the district court was correct on that. I would also just note that under Pelham's proposal, there would essentially be no need to prove either that the requested extension or accommodation actually related to the disability and no need to prove that any equal opportunity was being denied. They essentially asked the court to write the causation requirement out of the statute and write out the equal opportunity requirement, which I think would be very inappropriate to do. It would untether the claim from the statutory elements. And it's also not necessary to create a standalone cause of action because under the existing law, the landlord would be liable if the causal nexus is established and it turns out a reasonable accommodation would be granted. So it's sort of the landlord's risk to not engage in the interactive process. But that's not the same as creating a standalone cause of action when Congress has not done so. So I think that would answer that question, Your Honor. And I think unless the panel has any other questions, I'm content to submit at this time. Apparently not. Thank you. Thank you. Have a little time left for rebuttal. Thank you, Your Honor. Given the posture, I think the take-home point for the appellants is that a tie goes to the Howards. Any ambiguity in the doctor's letters should have been construed in favor of the Howards and go to a jury. The ambiguity in question we have, Your Honor, is that the doctor's letters identified Glenn had a disability and he needed to stay. It also threw in the long travel comments, which we now know to mean Florida. At the same time, any ambiguity goes to the Howards. Turning to the interactive process issue briefly, in our briefs we made the argument from the text, the canon of construction, and a body of analogous case law that the interactive process applies to Fair Housing Act. Excuse me. My colleague has mentioned that this court turned to employment regulations and found the interactive process there. But Barnett was the case that first found the interactive process, Your Honor, and it found it in the statute. It looked to implementing regulations, but the grounding for the interactive process is in the statute itself. SNAP confirms this, referring to it as statutorily required. One final point about the regulations. In this court's Giebler case — I'm sorry. Is it statutorily required in Section 3604? I'm sorry, Your Honor. The interactive process is not in the Fair Housing Act, however. It's not, Your Honor. It's not explicit in the text, but it's not there in the ADA or the Rehabilitation Act either, Your Honor. And in terms of looking to regulations, this court in Giebler at 343 F3rd at page 1149 said that we can look to employment regulations in the Fair Housing Act. I see my time is up. The tie goes to the Howards, Your Honor. Okay. Thank you for your argument, and we also thank you for taking a pro bono assignment. It's a help to the court. Thank you. So the case of Glenn Howard v. HMK Holdings et al. is submitted.
judges: Ikuta, Woodlock, Bennett